UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| HEIDI SPECHT, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWEST HELICOPTERS LLC, a Washington Corporation; BRIAN REYNOLDS and the marital community comprised thereof, an individual; PURCELLMDICAL PLLC, a Washington Corporation; and SHAWNA PURCELL and the marital community comprised thereof, an individual;<br><br>Defendants. | NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Heidi Specht ("Specht") requests damages and attorneys' fees and costs for the wrongful conduct of Northwest Helicopters LLC ("NH LLC"), Brian Reynolds ("Reynolds"), Purcellmdical PLLC ("Purcell PLLC") and Shawna Purcell ("Shawna").

COMPLAINT FOR DAMAGES - 1

## I. JURISDICTION AND VENUE

1.1     This action arises from an employment relationship between Plaintiff and Defendant NH LLC.  Plaintiff alleges claims based on violations of the Washington Law Against Discrimination ("WLAD"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and common law.

1.2     This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1.3     Venue is proper in the Western District of Washington because the events and transactions giving rise to Plaintiff's claims took place in the Western District of Washington.

1.4     Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant Northwest Helicopters LLC for sex and disability discrimination as well as retaliation.  On September 8, 2021, Plaintiff received a right to sue letter from the EEOC.

## II. PARTIES

2.1     Plaintiff Specht resides in Thurston County, Washington.

2.2     Defendant NH LLC is an "employer" with the requisite number of employees to be subject to the WLAD and Title VII.

2.3     Defendant Reynolds is a resident of Thurston County, Washington and the owner of Defendant NH LLC.

2.4     Defendant Purcell PLLC is located in Thurston County, Washington. According to the Washington Secretary of State's webpage, Defendant Purcell PLLC is engaged in the business of Health Care, Social Assistance & Service.

COMPLAINT FOR DAMAGES - 2

2.5     Defendant Shawna resides in Thurston County, Washington and is the owner of Defendant Purcell PLLC.

### III.    FACTUAL BACKGROUND

3.1     Defendant NH LLC and Reynolds employed Specht as an Executive Assistant from September 2019 to May 2021.

3.2     Throughout Specht's employment, she reported to Reynolds.

3.3     Initially, Specht believed that she had found her dream job at NH LLC.  She enjoyed working at NH LLC and had developed a good rapport with Reynolds and his crew.  Regrettably, things quickly deteriorated.

3.4     Reynolds developed an unhealthy obsession with Specht.  He wanted to know where she was, what she was doing, and who she was with at all times.  Reynolds told Specht that he had "*eyes everywhere*" and that he was "*well connected with law enforcement*."

3.5     Reynolds similarly told Specht that he had guns and could take care of any problems that arose; many of Reynolds' guns were kept in the office.  He encouraged Specht to call him after work if she needed protection or help.  He similarly told her that he would likely know where Specht was by virtue of his "*contacts*."

3.6     After impressing upon Specht his connections and access to weapons, Reynolds began offering Plaintiff trips on helicopters and his private jet.

3.7     On September 2, 2020, Reynolds took Specht and some of her girlfriends on a private jet ride.  Following her private jet ride with Reynolds, Specht thanked Reynolds and provided him and his co-pilot with snacks and beverages as a thank you.  Reynolds was not impressed and told Specht later that "*he was expecting something different from Specht*."  When Specht asked Reynolds what he wanted, Reynolds stated "*you know what I want*."

3.8     Shortly after the private jet ride, Specht discovered Reynolds riffling through her purse at work.  When Specht asked Reynolds what he was doing, he told her that he "*needed to know what was in the purse.*"  Specht immediately reported this incident to Connie Dancy ("Dancy"), Human Resources ("HR") for NH LLC.

3.9     While Specht was upset and scared by Reynolds and his escalating behavior toward her, she was also not in a position to quit her job.  As a result, she tried her best to keep a safe distance from Reynolds and refused to attend any special trips or outings with him unless another employee was attending.

3.10    Despite her best attempts to remain at a distance from Reynolds, Specht reported to Reynolds and could not avoid one-on-one contact.  Throughout her employment, Reynolds constantly made inappropriate comments to Specht including, but not limited to, telling Specht about "*penis measuring*" occurring at work and asking Specht if she had "*discovered porn on his device.*"  On one occasion, Reynolds watched Specht eating a banana and made a sexual reference about how she was eating her banana in the privacy of her office.  Specht was disgusted but also scared – Reynolds openly hung panties and bras at the office bar, so she knew the company was accepting of his behavior.  She wasn't sure who to turn to.

3.11    In December 2020, Reynolds decided he wanted to give Specht a performance review.  At that time, Specht was recovering from a tailbone injury and could not sit.  Reynolds did not like when Specht stood in front of his desk, and had yelled at her for doing so before, so she had to kneel for her performance review.  While Specht was kneeling before Reynolds, Reynolds stated, "*you look like you want a raise in that position.*"  Specht quickly replied by stating that she did want a raise but that she was not willing to do "*that*" to get a raise.  Reynolds laughed and told Specht he would give her a raise to $88,000.00 annually if

she did not tell HR about his comment.  Reynolds said that Specht was "*worth it and so much more*."

3.12    In January 2021, Specht was informed by her significant other that he had been exposed to Covid-19.  At that time, Reynolds did not know that Specht had a significant other because Specht was careful not to share anything about her personal life with Reynolds after the private jet incident.

3.13    Specht immediately reported the possible exposure and explained to Reynolds and Dancy that her significant other was the source of contact.  Reynolds became enraged.

3.14    Reynolds repeatedly asked Specht about her significant other and wanted to know his name, what he did for a living, and when Specht was with him.  Specht attempted to keep the information limited to the dates of possible exposure but Reynolds would not relent.

3.15    Following the potential Covid-19 exposure, Specht quarantined as directed by Reynolds and obtained Covid-19 testing, which came back negative.

3.16    Shortly after Specht tested negative, however, she learned that her partner had tested positive.  Not wanting to place any employees at risk, she again reported her partner's positive test to Reynolds and Dancy.

3.17    Once again, Reynolds became enraged.  He told Specht to make a choice between her job and her relationship.  Reynolds specifically told Specht that "*you will not be able to work and see him*."  He then told Specht that he would be hiring a doctor that Specht would be required to consult with as a condition of her continuing employment at NH LLC.

3.18    Reynolds hired Shawna and Purcell PLLC to consult with Specht about her health and exposure to Covid-19 even though Specht had produced a negative Covid-19 test result.

COMPLAINT FOR DAMAGES - 5

3.19 From January 19, 2021 to February 25, 2021, Shawna repeatedly called, texted, and emailed Specht about Specht's health. In addition to asking Specht about possible Covid-19 related symptoms, she asked Specht about her mental health, menstrual cycle, and probed her multiple times, on the phone, about Specht's male partner and Specht's mental health. Shawna similarly dispensed medical advice to Specht and indicated that Specht's compliance with the medical advice was necessary if Specht wanted to return to work. Specht followed Shawna's directives for treatment and further Covid-19 testing because she did not believe she had any other choice.

3.20 On information and belief, Shawna spoke with Reynolds about the information she had obtained from Specht. At no relevant time did Specht authorize the release of her medical information to Reynolds. At no relevant time did Specht sign any authorization for care or services from either Shawna or Purcell PLLC.

3.21 Despite receiving multiple negative Covid-19 tests, Shawna would not return Specht to work until January 27, 2021. Even after Specht was returned to work, Shawna continued to text Specht and call her to ask personal and invasive questions about Specht's physical and mental health as well as Specht's male partner. As a condition of continued employment, Reynolds demanded that Specht continue to speak with Shawna and provide Shawna with any information she requested of Specht.

3.22 Specht repeatedly complained to Dancy about Shawna and Reynolds probing her for personal and private medical information and the medical information of her partner to no avail. She explained that she felt targeted and asked why no other employees were being treated the way she was being treated. She also explained that she had taken multiple tests and always tested negative for Covid-19, despite Reynolds and Shawna insisting she was not safe to return to work.

3.23     In February 2021, after Specht returned to work, Reynolds reminded Specht that she was not allowed to see her partner anymore.  Reynolds similarly told Specht that he was rescinding Specht's raise because of her Covid-19 exposure and because he "*really liked [Specht] more than [she] knew*" and his feelings had gotten in the way of his decision to provide the raise.

3.24     In February 2021, Specht reached her breaking point.  She texted Dancy about the private jet incident, the kneeling for her performance review and Reynolds' insinuation that oral sex could get her a better raise, the subsequent denial of the raise, and the disgusting and despicable things that Reynolds was saying to and seeking from her on a daily basis.  While Dancy appeared sympathetic, she did nothing other than applaud Specht for refusing to be another one of Reynolds' "*side chicks*."

3.25     In May 2021, Specht used paid time off to visit family in Ecuador.  She explained to Reynolds that she would be taking Covid-19 precautions and testing before returning to the U.S.  In response, Reynolds told Specht that she would be required to work with Shawna and Purcell PLLC in order to return to work.

3.26     On May 12, 2021, Specht emailed Dancy and reminded her that consulting with Shawna and Purcell PLLC made her uncomfortable and explained that Shawna had previously requested personal medical information not related to Covid-19 while also seeking medical and personal information about Specht's former partner.

3.27     On May 13, 2021, Reynolds terminated Specht, stating that "*It's just not working out for me.*"

## IV.    CLAIMS

### FIRST CAUSE OF ACTION
### (Hostile Work Environment under Title VII and the WLAD)

COMPLAINT FOR DAMAGES - 7

4.1 Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 3.27 above.

4.2 Plaintiff was subjected to unwelcome sexual harassment by her supervisor Reynolds which was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

4.3 Plaintiff was subjected to Reynolds' attempted extortion of sexual favors in exchange for job benefits.

4.4 Plaintiff was subjected to unwelcome harassment by Reynolds related to Reynolds' perception that Plaintiff was disabled or suffering from a temporary disability.

4.5 Management knew or should have known of this harassment and failed to take reasonably prompt and adequate corrective action designed to end it.

4.6 The above facts give rise to a claim against Defendant NH LLC for harassment and hostile work environment in violation of the Washington Law Against Discrimination, RCW 49.60 *et seq.* and Title VII.

### SECOND CAUSE OF ACTION
### (Retaliation under Title VII and WLAD)

4.7 Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 4.6 above.

4.8 After Plaintiff opposed Reynolds' sexual harassment of her and his inappropriate attempts to have Plaintiff consult with his hired physician about an alleged disability, Plaintiff was denied her raise and terminated.

4.9 Plaintiff opposed what she reasonably believed to be discrimination and harassment based on sex and disability and/or perceived disability. Plaintiff provided information to establish that discrimination and harassment occurred.

COMPLAINT FOR DAMAGES - 8

4.10     Knowledge or suspicion of protected activity was a substantial factor in Defendant NH LLC's decision to rescind Plaintiff's raise and terminate her employment.

4.11     The above facts give rise to a claim against Defendant NH LLC for retaliation in violation of the WLAD and Title VII.

### THIRD CAUSE OF ACTION
### (Disparate Treatment under Title VII and WLAD)

4.12     Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 4.11 above.

4.13     Defendant took adverse employment actions against Plaintiff due to her gender and disability, or perception of disability, including, but not limited to, reducing Plaintiff's compensation and terminating Plaintiff's employment.

4.14     The above facts give rise to a claim against Defendant NH LLC for disparate treatment in violation of the WLAD and Title VII.

### FOURTH CAUSE OF ACTION
### (Wrongful Termination in Violation of Public Policy)

4.15     Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 4.14 above.

4.16     Washington state has clearly expressed its public policy of promoting equal employment opportunities for women and disabled employees by prohibiting discrimination and harassment in the workplace.

4.17     Plaintiff was subjected to outrageous sexual harassment and disability discrimination by her supervisor Reynolds.  Plaintiff reported the harassment multiple times to Human Resources to no avail.  Plaintiff objected to the retaliatory reduction in compensation as well as the requirement that she provide confidential and sensitive medical information to her employer's hired physician – all of which was based on the incorrect

assumption that Plaintiff was disabled.  As a result of Plaintiff's efforts to secure a safe and harassment free workplace, she was terminated.

4.18    Discouraging Plaintiff's conduct would jeopardize Washington's public policy of promoting equal employment opportunities for women and the disabled.

4.19    Defendant NH LLC has no justifiable reason for Plaintiff's termination.

4.20    The above facts give rise to a claim against Defendant NH LLC for wrongful termination in violation of public policy under Washington state law.

## FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

4.21    Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 4.20 above.

4.22    Defendant Reynolds and Defendant Shawna intentionally or recklessly caused emotional distress to Plaintiff through extreme and outrageous conduct.

4.23    Defendant Reynold's and Defendant Shawna's conduct proximately caused Plaintiff to suffer ongoing and severe emotional distress.

## SIXTH CAUSE OF ACTION
### (Aiding and Abetting Under WLAD)

4.24    Plaintiff re-alleges and hereby incorporates paragraphs 1.1 through 4.23 above.

4.25     Defendants Purcell PLLC and Shawna aided, abetted, and encouraged Defendants NH LLC and Reynolds to both discriminate and retaliate against Plaintiff in violation of RCW 49.60.220.

4.26    Defendants Purcell PLLC and Shawna aided, abetted, and encouraged Defendants NH LLC and Reynolds to harass Plaintiff based on gender and disability, or the perception of disability, in violation of RCW 49.60.220.

COMPLAINT FOR DAMAGES - 10

MBE Law Group PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington  98101
(206) 400-7722

## V.  DAMAGES

5.1   Plaintiff re-alleges and hereby incorporate paragraphs 1.1 through 4.26 above.

5.2   As a direct result of Defendants' unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits and mental and emotional distress as well as punitive damages, all in amounts to be determined at trial.

## VI.  DEMAND FOR JURY

6.1   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## VII.  PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that the Court enter judgment against Defendants for the following:

a.   Damages for back pay, front pay, and lost benefits in an amount to be determined at trial;

b.   Damages for emotional harm in an amount to be determined at trial;

c.   Prejudgment interest;

d.   Punitive damages pursuant to Title VII;

e.   Compensation for the tax consequences associated with a damages award;

f.   Attorneys' fees and costs pursuant to any applicable statutes; and

g.   Any further and additional relief that the court deems just and equitable.

DATED this 4th day of October, 2021.

**MBE LAW GROUP PLLC**

By: _s/ Lisa A. Burke_
By: _s/ David C. Martin_

Lisa A. Burke, WSBA No. 42859
David C. Martin, WSBA No. 38325

| | |
|---|---|
| 1 | 1700 Seventh Ave., Suite 2100, PMB 574 |
| 2 | Seattle, Washington 98101 |
| 3 | Tel: (206) 400-7722 |
| 4 | Fax: (206) 400-7742 |
| 5 | Email: lburke@mbelg.com |
| 6 |        dmartin@mbelg.com |

*Attorneys for Plaintiff Specht*

COMPLAINT FOR DAMAGES - 12

**MBE LAW GROUP PLLC**
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
(206) 400-7722